UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARTA ROMERO, FABIANA SANTOS, *
GLADYS FUENTES, SANTIAGO CRUZ, *
and MILAGRO ALVAREZ, *
 *
Plaintiffs, *
 *
v. * Civil Action No. 1:18-cv-10324-IT
 *
MCCORMICK & SCHMICK *
RESTAURANT CORP. d/b/a *
MCCORMICK & SCHMICK'S SEAFOOD *
RESTAURANT, *
 *
Defendant. *

Memorandum and Order

March 17, 2020

**TALWANI, D.J.**

Plaintiffs Marta Romero, Fabiana Santos, Gladys Fuentes, Santiago Cruz, and Milagro Alvarez brought suit against their former employer, Defendant McCormick & Schmick Restaurant Corp., d/b/a McCormick & Schmick's Seafood Restaurant ("McCormick & Schmick's"), alleging unlawful discrimination due to sexual harassment in violation of M.G.L. c. 151B. Before the court is Defendant's Motion for Summary Judgment as to Plaintiff Milagro Alvarez [#32].[1] For the following reasons, the motion is DENIED.

**I.  Factual Background**

The facts are taken from the summary judgment record, in the light most favorable to Milagro Alvarez as the non-moving party and resolving disputes of material fact in her favor.

Milagro Alvarez began her employment as a dishwasher and cleaner for Defendant at its

---

[1] Plaintiffs' Motion for Partial Summary Judgment [#36] will be addressed in a separate order.

Faneuil Hall restaurant on April 26, 2012. Pls' Resp. to Def's Statement of Undisputed Material Facts ("Pls' SOF Resp.") ¶ 1 [#42]. Her work included washing dishes downstairs from the restaurant and cleaning the lavatories. Alvarez Dep. 31:5-20 [#42-1]. She worked alone when she cleaned the lavatories. Id. 47:9-15. When Alvarez started her employment, Marta Romero was already employed in the same position. Pls' SOF Resp. ¶ 2 [#42].

Roman Buruca began as sous chef on December 9, 2013. Id. ¶ 4. Although the Complaint alleges that Buruca began touching Romero in sexual and inappropriate ways in 2014, Complaint ¶ 14 [#1-1], Alvarez did not personally observe this conduct until January 2015. Pls' SOF Resp. ¶ 9 [#42]. Alvarez estimated that between January 2015 and July 2015, she saw Buruca "hugging" her coworker Marta Romero over twenty times. Id. She described Buruca approaching Romero from behind while Romero was washing dishes and grabbing Romero's breasts with both hands or hugging her waist. Alvarez Dep. 35:6-22 [#42-1]. Alvarez saw Buruca touch Romero's breasts on about five occasions. Pls' SOF Resp ¶ 10 [#42]. Romero appeared bothered by Buruca's behavior. Id. ¶ 9. On one instance, she heard Buruca refer to Romero in the diminutive as "Marita" and tell her that "in a short time, you're going to be mine" as he grabbed her from behind. Alvarez Dep. 38:3-5 [#42-1]; Def's Resp. to Pls' Additional Material Facts ("Def's SOF Resp.") ¶ 27 [#43].

During the same period, Alvarez also observed Buruca grab or hug another coworker, Maria Alvarez ("Maria"), in the same manner on many occasions. Alvarez states that Maria did not hug Buruca back and Maria appeared "bothered" and "upset" by Buruca hugging or touching her. Pls' SOF Resp. ¶ 13 [#42]; Alvarez Dep. 39:9-39:21; 40:14-15; 43:18-20 [#42-1]. Alvarez observed Buruca enter the small food prep area where Maria worked to "hug her." Alvarez Dep. ¶ 40:7-13 [#42-1]. Alvarez also heard reports from her co-workers of their interactions with

Buruca. Def's SOF Resp. ¶ 28 [#43]. Buruca did not touch Alvarez however. Pls' SOF Resp. ¶ 14 [#42].

Aaron Hopp was hired as Executive Chef for the restaurant on May 4, 2015. Pls' SOF Resp. ¶ 5 [#42]. Two days later, Gladys Fuentes began working as a prep cook at the same location. Id. ¶ 3. Sometime thereafter, Alvarez witnessed Fuentes ask Hopp for food, and Hopp respond "did you want something to eat?" and "here, eat this," indicating his penis. Id. ¶ 15; Alvarez Dep. 45:10-45:16, 46:12-46:20 [#42-1]. Alvarez heard other reports from her co-workers of their interactions with Hopp. Def's SOF Resp. ¶ 28 [#43]; Alvarez Dep. 45:10-12 [#42-1]. Alvarez does not allege that Hopp directed any harassing comments or conduct at her.

Alvarez was afraid to go to work, and to clean the lavatories when Buruca or Hopp were at work. Pls' SOF Resp. ¶ 16 [#42]; Alvarez Dep. 44:14-45:6; 47:2-15 [#42-1]. She worried that Buruca or Hopp would touch or hug her. Def's SOF Resp. ¶ 26 [#43]; Alvarez Dep. 45:2-45:6; 47:2-5 [#42-1]. Alvarez did not report the incidents prior to July 2, 2015, however, because she was afraid she would be fired. Def's SOF Resp. ¶ 29 [#43]; Alvarez Dep. 67:8-15 [#42-1].

Alvarez experienced a rise in blood pressure, had difficulty sleeping, and lost weight. Pls' SOF Resp. ¶ 17 [#42]; Alvarez Dep. 88:20-91:21 [#42-1]. She also thought about Buruca's conduct when not working and was bothered and scared by it. Def's SOF Resp. ¶¶ 31-32 [#43].

On July 2, 2015, Alvarez and her co-workers lodged a complaint against Buruca and Hopp in a meeting with the general manager of the restaurant, David Wilson. Pls' SOF Resp. ¶ 19 [#42].

Buruca resigned from his position on August 21, 2015. Pls' SOF Resp. ¶ 4 [#42]; Buruca Resignation Letter [#35-2]. Hopp left his position on May 28, 2016. Pls' SOF Resp. ¶ 5 [#42]; Hopp Resignation Letter [#35-3].

3

Alvarez continued working for Defendant until January 7, 2018, when she resigned her employment. Pls' SOF Resp. ¶ 1 [#42].

## II. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-moving party and resolves any disputes of material fact in their favor. Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). A "genuine dispute" is one that, based on the evidence submitted at this stage of litigation, "a reasonable jury could resolve . . . in favor of the non-moving party," and a "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted).

The moving party is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the burden shifts to the non-moving party to set forth "specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

## III. Discussion

Plaintiff Milagro Alvarez claims that she was subjected to a hostile work environment, amounting to sexual harassment in violation of M.G.L. c. 151B, § 4. Workplace sexual harassment may constitute discrimination on the basis of sex in violation of the Massachusetts Anti-Discrimination law, Chapter 151B. M.G.L. c. 151B, § 1(18); M.G.L. c. 151B, § 4(1); Ramsdell v. W. Mass. Bus Lines, Inc., 415 Mass. 673, 677 (1993). "Sexual harassment" includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual

4

nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." M.G.L. c. 151B, § 1(18)(b). A hostile work environment is one "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, pos[ing] a formidable barrier to the full participation of an individual in the workplace." College-Town Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987).

Defendant seeks summary judgment of Alvarez's claim, asserting that: 1) the alleged conduct was not "severe and pervasive" so as to objectively interfere with her work performance; and 2) there is no evidence that the conduct subjectively interfered with Alvarez's work performance.

### A. Objectively Severe and Pervasive

Defendant argues that Alvarez cannot show that the alleged conduct was sufficiently severe and pervasive to make out a claim because the alleged sexual conduct and statements were directed at other employees and in any event were not severe or pervasive.

The court finds no requirement in the statutory scheme, case law, or common sense that would preclude a hostile work environment claim because sexual conduct and statements were directed at co-workers only. The statute itself focuses on the "work environment," defining sexual harassment to include "verbal or physical conduct of a sexual nature when . . . such . . . conduct ha[s] the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." M.G.L. c. 151B, § 1(18) (emphasis added). Under the statute, if the purpose or effect of sexual conduct is to unreasonably interfere with employees' work performance through

5

an intimidating work environment, the fact that a particular employee has not yet been grabbed, touched or ridiculed does not negate the hostile work environment. As the court noted in Ruffino v. State Street Bank and Trust Co., the proposition "that conduct which was not directed at the plaintiff . . . may not be evidence of hostile environment sexual harassment" is "simply wrong as a matter of law and common sense." 908 F.Supp. 1019, 1036 n.28 (D. Mass. 1995) (noting further that "the pervasive use of insulting and demeaning terms relative to women in general may serve as evidence of a hostile environment"); see also Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997) ("Evidence of the harassment of women other than [plaintiff], if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment . . .").

The cases on which Defendant relies do not suggest otherwise. In Smith v. Clay Chevrolet, Inc., the court granted defendant summary judgment on plaintiff's hostile work environment claim where plaintiff complained that a consensual, romantic relationship between two employees interfered with plaintiff's work because of the co-worker's unavailability. 2016 WL 8138606 at *11 (D. Mass. Nov. 17, 2016), report and recommendation adopted by (D. Mass. Jan. 31, 2017). Bourbeau v. City of Chicopee similarly rejected a claim based on "amorous contact between co-workers." 445 F.Supp. 2d 106, 113 (D. Mass. 2006). In Ritchie v. Dep't of State Police, the court declined to reach on a motion for judgment on the pleadings (but did not reject) plaintiff's claims that favoritism from office romance are enough to establish a hostile work environment claim. 60 Mass. App. Ct. 655, 661 (2004). None of these cases involved unwanted sexual contact in the workplace – such as the allegations that Buruca came from behind and grabbed a co-worker's breasts -- that gave rise to fear as Alvarez alleges here.

Defendant next argues that the conduct Alvarez alleges occurred was in any event not

6

objectively severe and pervasive enough so as to interfere with a reasonable person's work performance. Defendant is correct that Plaintiff must show that the conduct alleged was "objectively" sufficiently severe and pervasive to "interfere with a hypothetical reasonable person's work performance." Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411, 412 n.2 (2001). However, the "hostility vel non of a workplace does not depend on any particular kind of conduct; indeed a worker need not be propositioned, touched offensively, or harassed by sexual innuendo in order to have been sexually harassed." Billings v. Town of Grafton, 515 F.3d 39, 48 (1st Cir. 2008) (quoting in part Quick v. Donaldson Co., 90 F.3d 1372, 1379 (8th Cir. 1996)). There is no numerosity requirement that a plaintiff must meet to establish a hostile work environment. Gnerre v. Mass. Comm'n Against Discrimination, 402 Mass. 502, 507-08 (1988); College-Town, 400 Mass. at 162. Instead, determining whether an employee was subject to a severe and pervasive hostile work environment is a fact-based inquiry "determined only by looking at all the circumstances," which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Gorski v. N.H. Dept. of Corr., 290 F.3d 466, 472 (1st Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Milagro Alvarez asserts that she saw Buruca come up from behind and grab her coworker Romero's breasts or waist multiple times between January and July 2015, Alvarez Dep. 35:6-22; 37:11-21 [#42-1]; Def's SOF Resp. ¶ 27 [#43]; Pls' SOF Resp. ¶¶ 9, 11 [#42],[2] and that she

---

[2] Defendant argues that the court should discount Alvarez's reporting because Romero stated in her deposition that Buruca only touched her breasts twice, Def's Mem. in Support of Mot. for Summary Judgment as to Milagro Alvarez 10 n.8 [#34], but this dispute is more properly left to the jury. See Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1186 (1st Cir. 1986) ("The

7

witnessed Buruca repeatedly hug or grab another coworker, Maria Alvarez, including in the small food prep area where Maria worked. Pls' SOF Resp. ¶ 13 [#42]; Alvarez Dep. 39:9-39:21; 40:7-13; 43:18-20 [#42-1]. She also states that during the same period, at some point between May and July, she saw executive chef Aaron Hopp gesture to his penis when her coworker Gladys Fuentes asked him for food. Pls' SOF Resp. ¶ 15 [#42]; Alvarez Dep. 45:10-45:16, 46:12-46:20 [#42-1]. Alvarez also testified she worked alone when she cleaned the lavatories and that the dishwashing area was downstairs from the main restaurant. Alvarez Dep. 31:5-20; 47:9-15 [#42-1].

Accepting these statements as true for purposes of summary judgment, a hypothetical reasonable person, working alone cleaning lavatories or out of the public view in the downstairs dishwashing area, who witnesses numerous incidents of non-consensual sexual grabbing and touching of her female coworkers, including approaching them from behind and in small areas, and rude sexual behavior from her supervisor, may find the conduct sufficiently severe and pervasive to reasonably fear that such sexual conduct would be directed at her and that this sexual conduct would thus interfere with her work performance.

### B. Subjective Interference with Work Performance

Finally, Defendant argues that no reasonable jury could find that Alvarez's work performance was subjectively interfered with by the alleged sexual harassment of her coworkers. Subjectively, "an employee who alleges sexual harassment must show that the employer's conduct was intentionally or in effect hostile, intimidating, or humiliating *to the plaintiff* in a way which affected her performance or the conditions of her employment." Ramsdell v. W. Mass.

---

court, however, must not consider the credibility of the witnesses, resolve the conflicts in testimony, or evaluate the weight of the evidence" when faced with a summary judgment motion) (internal citation and quotation marks omitted).

Bus Lines, Inc., 415 Mass. 673, 678–79 (1993) (emphasis in original).

Alvarez states that she was afraid to go to work and was afraid to be alone with Buruca because she thought he would touch or grab her too. Pls' SOF Resp. ¶ 16 [#42]; Alvarez Dep. 44:14-45:6, 47:6-21 [#42-1] ("I was able to see the way that he was hugging Marta. . . Yes, I was afraid that he would hug me too."). When she had to clean the lavatories, as part of her job, she was fearful that Buruca or Hopp would touch her. Def's SOF Resp. ¶ 26 [#43]; Alvarez Dep. 47:6-15 [#42-1]. Even outside of work, she thought about their conduct and was bothered by it. Def's SOF Resp. ¶ 32 [#43]; Alvarez Dep. 90:21-23 [#42-1].

Alvarez supports these allegations of fear with testimony that she suffered loss of sleep over the course of two to three months, an increase in blood pressure, anxiety, and weight loss. Alvarez Dep. 88:23-90:2; 91:3-21 [#42-1]. Alvarez asserts further that she was fearful of being fired if she filed a complaint about the conduct. Def's SOF Resp. ¶ 29 [#43]; Alvarez Dep. 67:8-15 [#42-1]. Physical and psychological effects of a hostile work environment such as those alleged by Alvarez are often the basis of showing subjective interference with work performance. See e.g., Noviello v. City of Boston, 398 F.3d 76, 83, 94 (1st Cir. 2005) (finding that plaintiff's evidence that she lost weight, experienced nightmares and panic attacks, and became anxious at work as a result of a hostile work environment underscored "the negative effect on her work performance.").

Defendant points to Alvarez's deposition testimony, where she was asked "Did the symptoms interfere with your ability to work?" and she responded, "No. I put in the effort in order to work because what else could I do?" Alvarez Dep. 102:12-15 [#42-1]. This is not, as Defendant suggests, an unequivocal statement that the alleged hostile work environment did not interfere with her ability to work. Rather, Alvarez's statement is entirely consistent with her

testimony that the sexual conduct she witnessed put her in fear (thereby unlawfully interfering with the conditions of her employment), which she endured because she was also afraid of losing her livelihood.

Defendant suggests further that the harms Alvarez alleges should be discounted, where she testified that she addressed them "with a cup mint tea" and "drinking water," and where her weight loss was "applauded by her treating physician." Def's Mem. in Support of Mot. for Summary Judgment 13 [#34]. In addition, Defendant points to Alvarez's failure to report the conduct prior to the meeting alongside her coworkers in July 2015. Id. These arguments may be presented to a jury. They are insufficient, however, to bar the sexual harassment claim where a reasonable jury could find that Alvarez was subjectively intimidated by the sexual conduct.

## IV. Conclusion

Accordingly, as Defendant is not entitled to judgment as a matter of law based on the record in front of the court, Defendant's Motion for Summary Judgment as to Milagro Alvarez [#32] is DENIED.

IT IS SO ORDERED.

March 17, 2020                                            /s/ Indira Talwani
                                                          United States District Judge